Mr. Klepper, we'd be pleased to hear from you to begin this morning. May it please the Court. Happy Constitution Day to everyone. And in that vein, let's start with Article III of the Constitution, which gives, extends the judicial power to controversies between citizens of different states. But ever since the Judiciary Act of 1789, Congress has said, not so much. We're going to put restrictions on where jurisdiction exists for diversity, and there are going to be some procedural prerequisites for the exercise of that jurisdiction. And the descendant of that original Judiciary Act of 1789 is Title 28, the U.S. Code. And here, Section 1441A provides that a civil action, quote, may be removed by the defendant or the defendants. And what the removing insurers wish to do is to rewrite that statute to say, indispensable defendants. Now, that would be quite an analysis in each and every case of removal. But for present purposes, it's enough to say, that's not what the statute says. It says defendants. And the only question is whether Hammons is properly a defendant to Hartford's Count 1 for declaratory relief. And everyone agrees that it is. And that's all the statute requires. What the removing insurers have failed to fully appreciate is the nature of the declaratory relief that Hartford seeks. Usually these nominal party cases involve situations where the plaintiff is the one coming into court seeking damages and says, these are the nine people against whom I'm seeking damages. And if there's a tenth who's named, but nobody knows why, because no damages are being sought against them, they may be treated as a nominal party, both for jurisdiction in the first instance and for removal purposes. But we're under the Declaratory Judgments Act. And there, the plaintiff is the one who walks into court and says, I want the court to settle a controversy. And I'm going to hail all of these other parties, all the interested parties, the defendants in, so that I may have a final resolution of this controversy. It's fairly uncontroversial hornbook law that a nominal party is an exception to the unanimous rule of unanimity, isn't it? It is. How can Hammond be other than a nominal party? Well, there, I will tell you that. At page, I'm sorry, at our complaint, paragraph 24, we allege exactly what the interest is. Hammond's has been named in a large universe of underlying actions. And the settlement of this action, because when this lawsuit was filed, only one of these actions had proceeded to settlement or judgment. How that is allocated among the insurers will affect how much in limits are available under all of the other insurers' policies for any future judgments or settlements that may come in the door. One of the difficulties that I had is that there do appear to be other lawsuits covered by the policy. I have no sense from the briefs or anything I saw on the record about the relationship of the facts in this appeal to any of those facts in the other lawsuits. Is there such a relationship? There is some of the underlying lawsuits. There are two of them in South Carolina that actually involve the same project. But as the Schlumberger case... No, mine was a factual... I'm sorry, it's a factual question. Each one of those cases depends on different facts for when the actual triggering event occurred that would trigger damages under indemnity under one or more of the insurance policies on the coverage chronology. Was it the same policy by each of the insurers in the North Carolina case that would also be at issue in the South Carolina case? Yes, Your Honor. Well, from a practical standpoint, I mean, basically you're making, as I understand it, an argument that the construction company, the builder, is not a nominal party because they're at risk of some sort of whipsaw action. Yes. But wouldn't that be ameliorated in the North Carolina action where you've got everybody at the table, all the insurance companies, all the cases for liability? Well, first of all, I would say, Your Honor, that that is an argument that can be made to the South Carolina Court of Common Pleas. Right. But in the federal point, what's the answer to my question? Your Honor, the pleadings deadline has closed in the Eastern District of North Carolina action. Now, when we filed our lawsuit, only one suit had indemnity bribe, this one suit. When Harleysville had an agreement to agree on how we were going to litigate this, they then five days later filed this lawsuit in North Carolina. And in it, they named the three lawsuits that they knew about at that time. And since then, there have been at least five extra lawsuits that have been filed against GR Hammonds. They didn't seek to add those to the North Carolina action. The pleadings deadline closed. We knew about it the whole time. They didn't do it. This was an effort by them to do the best they could to get this case in North Carolina. But as these new cases came in, it became clear that some of those other cases hurt them, the trigger position that they were advocating in North Carolina. So they wound up not adding them to the case. I'm sorry, Judge Duncan? I'm sorry. What would be your... How would you define the parameters of a nominal party for just prudential purposes? In the declaratory judgment context, because that's what you're talking about. Somebody with an interest in this case, which Assurance Company of America sitting at the left over there, they admitted at Joint Appendix 156, and which GR Hammonds admitted in this case at Joint Appendix 214. What they are is somebody, the proper party, is somebody who has an interest in the controversy. And Hammonds' interest is specifically what? Its interest is in seeing how this allocation across the triggered insurance policies, what limits get left for the other claims as they're reduced judgment or settlement. What troubles me here is that you keep saying that Hammonds has an interest, but Hammonds is not asserting an interest. Hammonds was silent with respect to a removal, and perhaps silence counts as non-consent. But if somebody has an interest in a matter, in a lawsuit, or feels that they're going to be on the hook in some way, or going to not receive any kind of coverage that's due down the line, it's all very speculative, but if Hammonds felt that he was going to be shortchanged in terms of coverage or in some other fashion, why wouldn't Hammonds be saying something about that? But Hammonds isn't being assertive at all. It's Hartford that is waxing so insistent about Hammonds' interest, which Hammonds isn't assertive. Respectfully, Your Honor, Hammonds did assert the interest at page 214 of the joint appendix. Hammonds retained its own attorney at its own expense, and answering 24 of our complaint which asserted what Hammonds' interest was, said, answering the allegations of paragraph 24, it is admitted that Hammonds remains a defendant in other construction defect actions and has an interest in this case. And that is in direct response to paragraph 24 of Hartford's complaint in this matter that asserted that that's what Hammonds' interest is. Is this in the South Carolina? In the South Carolina action. Or is it in the district court in South Carolina? Oh, I'm sorry. This is in the U.S. District Court of South Carolina. So they did assert that interest through their own attorney. They also— What page did you cite again? Page 214 of the joint appendix, Your Honor. And there is another point at which they assert that interest, because in the U.S. District Court for South Carolina, they also—you file these interrogatory answers right off the bat. And at pages 228 to 229 of the joint appendix, G.R. Hammonds, through its own counsel, said Hammonds believes that, and they name all the insurers, are all liable to provide both the defense and full coverage for any settlement arising out of any of the underlying cases, noting the various pleadings to Hammonds pursuant to their individual insurance policies with Hammonds. And there are cases where somebody is deemed nominal, even though they didn't even enter an appearance. There's Judge Copenhaver's dispenser decision for the Southern District of West Virginia, where the— To say they're nominal or more than nominal? To say that they're more than nominal, even though they didn't enter an appearance. Now, of course, because of the procedure for these removal cases, most of the precedent occurs at the district court level. But in that one, the tort feeser in an uninsured action was named as a nominal party, didn't retain an attorney, didn't enter pleadings in the case, but it was found that at the time of removal that the— In this particular action, the district court could enter a final judgment in the contribution action in favor of your client with Hammonds' complete absence, couldn't it? And it wouldn't be a defective judgment? Well, count two would not be defective, and count one, which is the contribution claim, count one, which is declaratory relief, it wouldn't be defective against the other insurers. They couldn't try to unsettle that down the road. You're not seeking any recovery from Hammonds. So what you're seeking is a recovery from the other insurers or contribution from the other insurance. You're not seeking anything from Hammonds. Normally when a plaintiff sues a defendant, a plaintiff is seeking something from the defendant. I mean, that's a lawsuit, you know, A sues B, A is claiming some violation on the part of B, and A is seeking some remedy from B, and so just a common sense of it, when A sues B and A is not seeking anything from B, and you're not seeking any recovery, you're not seeking any equitable relief, you're not seeking any monetary relief, that sort of goes against what I always thought of a lawsuit was. Well, Your Honor, this is a declaratory judgment.  Your Honor, if I may, Schlumberger, if we look at that case, what our interest is, is in making sure that G.R. Hammonds is nailed down in a future case. Because you're going to seek a declaratory relief against Hammonds? We are. That's what we're doing. To seek declaratory relief against somebody is to join them as a party. What this court's precedents say, I'm seeking a declaration of what the proper allocation of this settlement is across the trigger policies. No, no, no, no, not a declaratory judgment with respect to other insurers, what are you seeking in terms of declaratory relief against Hammonds? Under Schlumberger, what we are seeking is to nail them down as to it, because what they think right now— Nail who down? What's that? Nail who down? Nail Hammonds down. Nailing you down. Hammonds, Your Honor, if we look at Schlumberger, what we are seeking to guard against is a whipsaw and my time is almost out, so if I may fully answer this question, Your Honor. May I have 30 extra seconds? Judge Duncan has a question. Oh, Judge Duncan has a question, too. And it relates back to my earlier question about your definition for purposes of deciding this appeal about the nominal party. Is it because—is it merely because Hammonds is an insured? Is it because Hammonds has asserted an interest in the document that you refer to? What makes Hammonds specifically, without reference to Schlumberger, more than a nominal party here? What makes them more than a nominal party is the pendency of other underlying actions where any judgments or settlements will draw from our policies, so that if Harleysville has its way and one of our policies gets a million dollars taken out and another lawsuit comes down the road, Hammonds may decide, oh, I wish that actually this had been spread across all of my other claims. This is all very speculative, though, isn't it? Because none of it relates to the particular suit under—that's being removed. This is why Schlumberger referred to the potential whipsaw effect, and the Dragas decision did as well. It's all very down the line and futuristic. Schlumberger said that as well. So did Dragas, Your Honor. And what G.R. Hammond—Hammonds and Zurek—Hammonds and Zurek both admitted this interest. Assurance, who is sitting at the table over there, they admitted that interest in their answer to this complaint. Judge McGee has a question for you. Yes. All right. We're probably re-plowing plowed ground here, but maybe it'll soak in this time. Yeah. Let's assume for purposes of argument that we affirm the lower court judgment. So now you're in the North Carolina District Court. How is Hammonds exposed to whipsaw in that action? How is Hartford or how is Hammonds exposed? Hammonds. The parties that you've got to show have an interest. So tell us how they're exposed there. They have the other cases are there, all the insurance companies are there, all the policies are before the court. How are they exposed? There actually is some exposure, Your Honor, and this is why Harleysville, until it went off and filed this action, had been filing seriatim actions in the Eastern District about each different project. Each different project can actually implicate different coverage timelines, and so some of these newer lawsuits that have come in are now exposing going beyond first Mercury's policy period and it's going to a later period, and that insurer is then going to need to be added to that other case. Each one of these gets resolved on its individual facts about when the damage occurred. But we need to make sure that whatever final declaration that is entered on those facts binds the parties to that case. So are these other, I'm assuming you're going outside the record now with new cases? Yes. But if we stick to what's in the record, just the cases in North Carolina, that also covers the one that's subject to the suit in the South Carolina State Court, correct? Yes. So tell me again, how is Hammonds exposed to a whipsaw effect in the North Carolina action? Everybody's there, all the policies are there, it's all adjudicated together. How are they exposed? They are not exposed to a whipsaw effect in the North Carolina action, Your Honor, as to those three projects. But on that point, freezing the record, on November 9th, when this case was removed to that had not been reduced to judgment, but that nobody knew how much Hammonds was going to be held liable for any of those. And that, okay. Thank you very much. Thank you, sir. Mr. Brown. Thank you, Your Honor. May it please the Court. I'm David Brown from Greensboro, North Carolina here. I represent Hardeesville in this case. I'm here on behalf of all the appellees. Mr. Reeves for Shrentz Company, Mr. Barrett for First Financial, other insurer appellee counsel are here, but I, as you know, will be speaking for the appellees here today. I want to return to a couple of things that have been addressed, and I think Judge Duncan asked a question earlier about the record currently before this Court, and I think that's important because there's a lot of speculation and things that might be out there or not out there. But what you have before this Court is a case filed in the Court of Common Pleas in Charleston that is an equitable contribution action, one insurer versus others, over only the Concord West project. What is clear from the face of the complaint is that Hammonds, the common insured, was fully defended in that case by the insurers, by Zurich, Hardeesville, and Hartford. That Zurich, Hardeesville, and Hartford each paid one-third of a million-dollar settlement to get Hammonds fully released in that case. That none of the carriers is seeking recoupment or reimbursement from Hammonds with respect to that case whatsoever, and that what is before the Court of Common Pleas that was then removed to the district court before Judge Gergel is a case solely about equitable contribution among insurers, each of whom is diverse and each of whom on the defense side consented to the removal. If I may, and factor this into your response, the argument is really more, and it's part of the burden that the appellant has, it's really more of a derivative argument. The interest that's being asserted is not Hammonds per se, it's the availability of a universe of actions. Is that your understanding? That is indeed correct, and I'm trying to make sure I can answer that within the confines of the record. The reality is that ... It's a perfectly fair response to say it's not within the confines of the record. I'll address that. I appreciate that opportunity. Hartford insured G.R. Hammonds back in the 1990s. Indeed, the Hartford policy that Hardeesville's content should be paying the Concord West claim is a 1998-1999 policy. After Hartford, G.R. Hammonds had coverage with Assurance Company of America, Zurich, later with First Financial Insurance, later with Hardeesville, my client, and then later with First Mercury. So there are policies across the time, and G.R. Hammonds, I think it's important to note, for all times here, was based in Lumberton, North Carolina, is a North Carolina corporation. Every insurance policy that was issued by all the insurers who are parties to this action was issued to Hammonds in Lumberton, in North Carolina, through a North Carolina agent, in North Carolina law. We would submit can and should apply to that dispute. All of those policies, to Your Honor's point, is before Judge Flanagan right now in the Eastern District of North Carolina action. There's no whipsaw effect that's going to occur to Hammonds or to anyone else if Judge Flanagan and Judge Hammonds were to guard to that action. So that's what we're dealing with. I think, in truth, we sit here today . . . I'm sorry. I think you haven't finished your answer to Judge Duncan's question. If I don't ask now, I'll probably forget it. Can we, in deciding a removal case in the South Carolina District Court, consider, for example, the proceedings in another district court separate . . . I'm trying to arrive at the . . . If we were to affirm how you would articulate the principle, I didn't mean to interrupt the flow of your answer there, but maybe you could work them together. Sure. Well, I would respectfully submit that if you affirm, the principle would be as Judge Gergel articulated it in his order below, which is that if you adopt what in essence is a Fifth Circuit standard, that the court could enter full relief on all claims raised without Hammonds being there, and as Judge Wilkinson pointed out, that is indeed the case here. On page 21 of the Joint Appendix, it's very clear what Hartford is seeking in its complaint, and that is both declaratory relief and equitable relief against the insurers. And I think the Seventh and Eighth Circuit standards of there being no reasonable basis for imposing liability against Hammonds would be a way to articulate the standard in terms of the nominal party exception to the rule of unanimity on removal. Now, directly to your point, what effect does the dependency of the North Carolina case have? Candidly, I don't know the answer to that. It's an interesting question. I would submit that it doesn't . . . That's why I asked. I would submit that . . . on the merits, an answer to their whipsaw argument that would be specific. Well, I don't think for purposes of the question of whether Judge Gergel's order should be affirmed, that it really matters whether you're looking just at Hartford's pleading, which is only Concord West, or you're looking at the pleadings before Judge Flanagan, which are Concord West and two other projects, South Hampton Point and Vista Cove, because in each of those cases, the insured has been defended and diminified, and as your Honor pointed out earlier, Hammonds is the party about whom we are concerned being whipsawed. Hammonds is a company based in the Eastern District of North Carolina. All of Hammonds' policies were issued in the Eastern District of North Carolina. Hammonds has every ability to come into that case and can and will, with very able counsel, make arguments that it wants to make about how allocation should be had with respect to those various claims. So I think whether . . . I'm going to ask you something. We're trying to define sort of what the universe of litigation is that we consider for purposes of the nominal part of the exception, and we have a number of choices. One is to confine it to the case right before us. The other is to confine it to other cases that are litigating the Concord West project. A third is to define it as cases that may have been brought against Hammonds on completely on unrelated projects. Now, as I understand your argument, you're arguing for a more confined universe. Probably the emphasis you put is on the case before us, and then your fallback argument is, well, if it's knocked out, it's Concord West, and those two cases have settled. So the question is, how broad a view of the universe ought we to adopt? And as I gather, one of the things about removal rules is that we want them . . . they're all threshold questions, and we want them to be resolved without creating a second major litigation. And so, as I understand your argument, it's the farther afield we go in defining the relevant universe, the more complicated it gets, the more speculative it gets, the more conjectural it gets, and the more complicated this threshold question of removal gets, because we start to see it conceivably play out, especially when the party, Hammonds itself, is not asserting it, but isn't part of your argument that you shouldn't go too far afield into conjecture and speculation and defining the relevant universe of litigation, because that's going to make removal, the nominal party exception, a very, very complicated thing. And that was what Judge Gergel honed in on. I mean, is that a part of what you're urging? Yes. In a word, yes. I mean, I think that articulated it very well. I think what this court is charged with, of course, is articulating a rule for the district courts in the Fourth Circuit, and that needs to be a rule that can be readily applied. It becomes more complicated for the trial court if they have got to, even in the absence of an assertion, or really a very concrete assertion on the part of Hammonds, if the trial courts in the circuit are going to have to survey a large, large universe in the absence of Hammonds asserting a stake, we're burdening them with a more difficult and conjectural inquiry. I believe that to be exactly correct, and I think this case illustrates the point very precisely. It comes up in diversity cases and federal question cases in a host of different contexts, but I think the facts of this case underscore the point, which is that Hartford filed a lawsuit that was properly within the original jurisdiction of the federal court under 1441A that was properly removed by the defendants who consented to it. I would suggest that the initial federalism concern about how you treat, for example, a non-diverse defendant is not at play. We have a case in the original jurisdiction of the district court, it was a diversity case this time, it could be a federal question case next time, and on the face of the complaint before Judge Gergel, it was very plain that no relief was being sought against Hammonds, that the court could articulate . . . What Judge Gergel saw, and sometimes district judges have a knack of really getting to the nub of things, and we have a knack of complicating it for them, sometimes a bit much, and what Judge Gergel is saying, hey, this is a contribution action among insurers, I'm going to issue a judgment in this action in the absence of Hammonds, and the way I look at it in the vernacular, Hammonds just doesn't have a dog in this fight. That being the case, I'm going to say he's a nominal party now, that's a good trial judge sort of going at the heart of the matter. I think that is applying good judicial common sense is the way to put it, and I think the Hammonds below, as we put in our petition for removal, or notice of removal, we repeatedly reached out to Hammonds' attorney, a very fine counsel, who never responded to us. Hammonds, granted, did not file a consent to the removal like the other defendants did, but nor did Hammonds object to it, nor did Hammonds move to remand, nor did Hammonds join in the briefing below in pursuit of remand, nor did Hammonds appeal to this court, nor did Hammonds file an appellate brief in this court, nor is Hammonds here today asking for oral argument time before it. I think that points out Judge Gergel's judicial common sense point about this is what the case is really about, it's a case among the carriers. Let me approach it from a slightly different direction. Why wouldn't, as a practical matter, an insurer always be more than a nominal party in a contribution action among insurers? Yeah, that's a good question. I think the insured would, I want to say always, but almost always be a proper party, and indeed I agree with Judge Gergel's point here that Hammonds was a proper party in this case, but when would the insured go over into being indispensable, it would be when there's an adjudication necessary of the insurer's rights under its policy that would in turn require the court to adjudicate and address what the policyholder's rights are under the policy, as opposed to addressing rights of one carrier versus another on a contribution case. So that goes beyond, I mean that's more stringent than the tests that have been adopted almost anywhere. Well I would respectfully say that's the indispensable party test that the 5th Circuit, the 7th and  For relief on all claims? For, could the court craft relief among the parties without the policyholder being there, I think would be the test. And if there's not an adjudication needed of the policyholder's rights under the policy, then I would submit that the policyholder would be indispensable. And I think we've pointed out some of these cases in our briefing, but I think the Providence Tradesman's Bank case from the U.S. Supreme Court found that the insured was a nominal party under an insurance coverage case. The Home Insurance versus Liberty Mutual case from the Southern District of New York was an insurer versus insurer case where the court found that the policyholder was not indispensable. The North America versus Home Indemnity case from the Eastern District of Pennsylvania. The court there, I think, kind of said almost what Judge Wilkins said earlier, that there cannot be a theoretical possibility of risk to the policyholder, there has to be a real and substantial risk, and they concluded in that case, in an equitable contribution case among carriers, that no adjudication of the policyholder's rights under its contract were necessary. So I concede, Judge Duncan, that it would be the rare case in an insurance coverage context where the policyholder's rights would not need to be first adjudicated and consequently the policyholder would, I think the default rule would be the policyholder would usually be indispensable. And doesn't that, I'm sorry, doesn't that weigh into your burden, the burden on the party seeking removal? Yeah, I think the burden on the party, yes, the burden on the party of the Appellee seeking removal here is to establish that no relief is being sought against Hammond's Blow, and I think that burden is met and established by reference to the pleading that Hartford filed by the record before Judge Gergel. Indeed, if you want to bring in the record before Judge Flanagan, it would, I think, the same facts would be established. But you know, Hartford is the one who's kind of suggested here that this theoretical, speculative whipsaw effect to Hammond's that is out there, and you know, candidly, there's simply no record before this court and none that could be made to bring before this court that would support such a finding. So I concede that the party that removed the Appellees here seeking to protect that removal bear an initial burden, but I believe we've met that burden. Why is Hartford so anxious to remain in state court, and why are you so anxious to get to federal court? Well, the . . . They're taking an appeal, and I mean, if they're taking an appeal, I mean, you seem to really care about it. Why? The . . . I think two reasons from Hardingsville's perspective, I'll let Hartford speak for themselves, but from Hardingsville's perspective, two reasons, one is that our policies were issued to an Eastern District of North Carolina policyholder, and we believe that should be the court to adjudicate the resolution of the dispute. The second reason is that you have a . . . The North Carolina policy. Correct. The second reason is that you have a dispute, I won't even say a dispute, a different rule in North Carolina versus South Carolina as to how insurance policies are triggered in these latent defect, construction defect lawsuits, where the South Carolina rule under Crossman Communities would seem to suggest that insurance policies over a time on risk trigger spread would each contribute, and the North Carolina rule under the Gaston County case would suggest that one policy would be triggered, and in some cases that Judge Timmons Goodson wrote when she was on the North Carolina Court of Appeals would suggest that the policy in effect when the construction was done would be the policy triggered. So Hardingsville's position would be that the Hartford policy would be triggered to pay the claim, and under North Carolina law, I think Hartford's position under South Carolina law would be that all the policies later on the risk would be triggered. I think that in a nutshell is what brings us to the dispute, and I think it underscores . . . It sounds like both parties are trying to do the best they can for their client. Well, I think . . . Which is what they're supposed to do. Thank you, Your Honor. And I think, you know, I didn't want to get too far afield into what we think and hope Judge Flanagan will be ruling on, but the reality is that North Carolina has a six-year statute of repose. South Carolina did have a 13-year statute of repose. It's now been legislatively changed to eight. But as we sit here today in 2013, you know, any additional claims that might impact Hartford's 1998-99 policy are gone. There are still claims out there that might impact Hardingsville's policies issued from 2003 to 2006. So I think that is an issue as well. I mean, Hartford suggests that, well, Hammonds may not want our policy to be fully eroded. Indeed, Hammonds may, but Hammonds really, in terms of, I think, the point bringing us here today about the nominal party exception to the rule of unanimity on removal, Hammonds, the point is, has been fully protected, fully defended, fully indemnified, and the district court below in South Carolina, on the order appealed from, can issue and craft full relief vis-a-vis the insurers without regard to adjudicating any of Hammonds' rights. And we respectfully submit that that should be the proper test for the nominal party exception to the rule of unanimity. If you have to respond to any further questions, otherwise, I'll... Thank you very much, Your Honor. Thank you. There has never been a case, Your Honor, where a party has said, I have an interest, I have a dog in this fight, and that party has been declared nominal. And so what I do, again, urge this court to do is to look at Joint Appendix 214. Mr. Brown was talking about, hey, G.R. Hammonds didn't join the motion to remand. Well, guess what? Assurance Company of America didn't either. First Mercury didn't either. And what makes Assurance Company of America special is that at Joint Appendix 156, Zurich admitted the very same interests that Hartford alleged. You know, the whole purpose of the rule of unanimity is to allow removal, not to allow removal when there's non-unanimity, but it's equally to allow unanimity where there is removal. And if you allow somebody whose status really seems to be as tenuous as here, you really are depriving parties, the defendants, with a genuine stake in the outcome of the contribution action of the right of removal that Congress has set forth. And if you have the four or five parties with a genuine stake in the controversy saying we want to remove it, and have that defeated by some party whose interest is really far more tenuous and far more speculative, you really have quite defeated the intent of Congress to make removal available when parties with a real stake in the lawsuit and a real stake in the action wish to do so. I mean, what we're doing is we're just, seems to me, to allow Hammonds here to defeat the and completely hollows out and undermines the whole rule of unanimity and the purposes behind it, which is defendants who have some real interest all want to remove, which they do here. I think Congress is saying, yeah, they should be able to do so and not have it defeated by this kind of tactic. Your Honor, I wouldn't call this a tactic because G.R. Hammonds is actually a necessary party under the South Carolina declaratory judgment statute. So we would have not been able to sue in state court without joining them. And the principle here is, and that Congress has recently amended the removal statute without actually changing 1441A itself to further define who a defendant is, and the principle this court has announced is that we construe the removal statute narrowly. And a better way to frame it, because Judge Duncan was getting into what the burdens of the parties are, we alleged an interest. And it is their burden to show that they do not have an interest. And we alleged a plausible interest. And Judge Wilkinson, I think what we're talking about is, well, how much guidance are we talking to district courts? How much are we giving them if we have to say to them, well, they have the most interest, and Hammonds has some interest, but we have to weigh it? And that's a difficulty. I don't think it's weighing it all over because we're not just saying that Hammonds has no interest because of, it's a contribution and action among insurers. He doesn't have a dog in the fight. The insurers have paid him what he's done. The two other suits have settled. This particular suit has his, he's received the coverage he's due. The fight that remains after the insurer receives full coverage is a squabble among insurers. Then why did Hammonds file an answer in this action? Now Mr. Brown said something that was actually somewhat inaccurate here. Hammonds, what the record does show, is late. They filed their answer late. It took them a while to do that. Hammonds did try to file a brief, but it did it late. It wanted to file a brief in support of Hartford's position, and it was stricken as not having followed the procedures. They're late to the game a lot, but they've retained an attorney, they retained an attorney who went in, filed an appearance, and filed pleadings that said, we have an interest. Please let us be here. And no one, that is in the record, your honor. And... But just look at it, look at the suit practically, not speculatively or theoretically. It's a contribution action among insurers. That's, as a practical matter, that's what you have. Well, but practically we have a declaratory judgment action. We have a statute. And their burden, your honor, is to show, actually this is our way of phrasing it, either that GR Hammonds has no interest or that it has an interest that is properly aligned as a plaintiff under the USF&G versus ANS manufacturing case, which is cited in our briefs. That is where, oh, you have an interest, but we're going to move it to the other side of the V, and so under the statute, they're not a defendant, they're a plaintiff. They didn't make that argument below, we pointed that out below. They didn't make that argument on appeal, we've pointed that out on appeal. They've never made that argument or tried to make it. What this court's precedents do is you find out who has an interest, and then you figure out how it's aligned. And quite frankly, in this arena, with this universe of actions, your ally today can be your adversary a week from now. That Assurance Company of America was not opposing remand, and they in fact affirmably asserted Hammonds' interest, and now they are along with Harleysville. So the rationale as you see it for reversing and finding that Hammonds is more than a nominal party is that he attempted, albeit belatedly, to intervene and appear below. Is that the basis? Because I'm still trying to... Yeah. He did appear below. He did. And that is my... That is what I am saying. I'm sorry if I cut off your question. No. It's not what you're... Well... I am saying that they did not, Harleysville and First Financial, the moving insurers, did not meet their burden of establishing that Hammonds either had no interest or even trying to show that that interest was instead properly aligned as a plaintiff interest. For two... Well, for that reason, any others quickly? Any other reason quickly? Any other reason? Besides the fact that he did seek to intervene. Well, he didn't seek to intervene. He was named. He filed an answer. That's fine. That's fine. Yes. Any other reasons? Any reasons beyond that? That I think that actually the court does show that that is a real interest here. Thank you. I want to be sure that your response that Hammonds appeared below is that that he filed a timely answer in the South Carolina State Court or that they have filed timely in the U.S. District Court for South Carolina? Well, this was removed before the time to answer, but they did file an answer in the U.S. District Court. That was where that answer was filed. Okay. And what that does is that even though you judge at the... I'm trying to figure out exactly what the interest is. The interest is stated... You're talking about he did this and he did that, but I've listened for close to an hour and I'm still trying to find out exactly. I'm just still... You've had an hour to deal with it. I'm still trying... You say he has an interest. He filed this. He wanted to do that. I'm still... When Judge Duncan asked you, what else? What is the interest? I just... Your time is up, but what is the interest? I still don't know. I will just end my argument with three joint appendix sites then. Joint Appendix 20, Joint Appendix 156, and Joint Appendix 214, which are the paragraph 24 of our complaint, the two answers to the complaint, and that we do not feel they have met their burden of establishing that that's not a real interest. We'll come down and agree counsel and move into our next case.
judges: J. Harvie Wilkinson III, Allyson K. Duncan, G. Steven Agee